IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-377-D

WILLIAM WILLIAMSON, )
)
          Plaintiff, )
)
v. ) **ORDER**
)
BRIDGESTONE AMERICAS, INC., )
individually and as successor-in-interest to )
BANDAG, INC., et al., )
)
          Defendants. )

On July 13, 2020, William Williamson ("plaintiff" or "Williamson") filed a complaint in this court seeking compensatory and punitive damages against 20 named defendants for defective design, failure to warn, breach of implied warranty, negligence, negligent retention and supervision, and gross negligence. See Compl. [D.E. 1] ¶¶ 55–122. Williamson's claims arise from his mesothelioma, which he attributes to asbestos exposure. See id. On November 15, 2021, after close of discovery, Ford Motor Company ("defendant" or "Ford") timely moved for summary judgment on all claims [D.E. 142] and filed a memorandum and statement of material facts in support [D.E. 143, 151]. Williamson failed to respond. As explained below, the court grants Ford's motion for summary judgment.

I.

On May 6, 2019, Williamson was diagnosed with mesothelioma. [D.E. 151] ¶ 2. Williamson claims that exposure to asbestos during his work as a "shade tree mechanic" on a farm and his work at various textile mills and factories caused his mesothelioma. See id. ¶¶ 3–10.

As for Williamson's work as a "shade tree mechanic," Williamson performed approximately 50 brake jobs. See id. at ¶ 8. Williamson did this work outside on vehicles that he or his family

owned. Id. at ¶¶ 8–9. Williamson performed the majority of this work on Plymouth and Chevy vehicles. Id. at ¶ 10. As for Ford vehicles, Williamson replaced brakes two times on a Ford tractor, replaced brakes a total of nine to twelve times on Ford passenger vehicles and trucks (replacing just the front or rear brakes each time), replaced the clutch one time on a Ford vehicle, and performed gasket work on two Ford vehicles. See id. at ¶ 11. All of the Ford vehicles that Williamson worked on had been purchased used, and Williamson did not know the maintenance history of any of the Ford vehicles he serviced. See id. at ¶¶ 13–15.

Williamson did not know the brand of equipment he removed from any Ford vehicle. Id. at ¶ 16. Because of the age of the Ford vehicles, Williamson believed that the brakes would have been changed at least once before he purchased and worked on them; therefore, they were not the original brakes that Ford had installed. See id. at ¶ 17.

Williamson never removed or installed a Ford brand automotive friction part (brake, clutch, or gasket). Id. at ¶ 12. Williamson never used Ford brand automotive replacement parts (brakes, clutches, or gaskets). Id. at ¶ 18. Williamson purchased the automotive replacement parts he used from a NAPA store in Oxford, North Carolina. Id. at ¶ 19.

As for Williamson's factory work, Williamson worked numerous factory jobs. At these factories, Williamson was exposed to asbestos from insulation on pipes, pumps, valves, and machinery. See id. at ¶ 6. Williamson also claims to have replaced a clutch while working at the Nelson Logging Company. See Dep. Tr. 1 [D.E. 124-1] 25. Williamson claims that his boss purchased the clutch from a NAPA store in Clarksville, Virginia. See id. at 26. However, Williamson did not recall the brand of clutch he used in the repair. See id.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007);

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378. A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Because this action is based on diversity jurisdiction under 28 U.S.C. § 1332, this court must apply the choice-of-law rules of the state in which it sits. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941); Am. Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 92 (4th Cir. 2003). North Carolina courts apply the substantive laws of the state in which the plaintiff sustained the alleged injury. See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988); Harco Nat. Ins. Co. v. Grant Thornton, LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010). Williamson's alleged exposures to asbestos occurred while working in North

3

Carolina, as did his mesothelioma diagnosis. Accordingly, this court applies North Carolina substantive law.

North Carolina law requires a plaintiff asserting asbestos product liability claims to demonstrate: (1) "that [the plaintiff] was actually exposed to the alleged offending products," Wilder v. Amatex Corp., 314 N.C. 550, 553–54, 336 S.E.2d 66, 68 (1985); and (2) "that exposure [to the alleged offending products] . . . was a substantial factor causing the plaintiff's injury." Finch v. Covil Corp., 972 F.3d 507, 512 (4th Cir. 2020); see also Smith v. Schlage Lock Co., 986 F.3d 482, 487 (4th Cir. 2021) (collecting cases); Connor v. Covil Corp., 996 F.3d 143, 148 (4th Cir. 2021); Cox v. AGCO Corp., No. 4:16-CV-84-M, 2020 WL 3473636, at *4 (E.D.N.C. June 25, 2020) (unpublished). Simply showing that products could have been present or even that "various products were shipped to various job sites on which [plaintiff] worked" does not satisfy the exposure or causation requirement. Wilder, 314 N.C. at 553–54, 336 S.E.2d at 68; see Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986) ("[M]ere proof that the plaintiff and a certain asbestos product are at the [job site] at the same time, without more, does not prove exposure to that product."). Moreover, the evidence must show that plaintiff was exposed "on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann, 782 F.2d at 1163–64; see Connor, 996 F.3d at 149; Jones v. Owens-Corning Fiberglas Corp. & Amchem Prod., 69 F.3d 712, 716 n.2 (4th Cir. 1995). Such evidence must "prove more than a casual or minimum contact with [defendant's] product." Finch, 972 F.3d at 513. North Carolina law does not recognize alternative causation theories, such as market-share liability or enterprise liability. See Griffin v. Tenneco Resins, Inc., 648 F. Supp. 964, 966–67 (W.D.N.C. 1986); Cox, 2020 WL 3473636 at *4.

III.

Ford argues that Williamson "has not—and cannot—prove that he was exposed to Ford asbestos-containing products with sufficient frequency and regularity to cause his mesothelioma"

4

and that Williamson "provided no evidence that he removed an automotive friction product manufactured or supplied by Ford." [D.E. 143] 6. Notably, Williamson failed to respond to Ford's motion for summary judgment and submit an opposing statement of material facts. Therefore, under Local Civil Rule 56.1(a)(2), each numbered paragraph in Ford's "statement of material facts [is] deemed admitted for the purposes of [Ford's] motion." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); see Fed. R. Civ. P. 56(e)(2).

Even viewing the record in the light most favorable to Williamson, Ford is entitled to summary judgment. No reasonable jury could infer that Williamson was actually exposed to asbestos-containing products (i.e. brakes, clutches, or gaskets) that Ford manufactured or sold. See [D.E. 151] ¶¶ 7–19. Notably, Williamson concedes that all of his Ford vehicles were in used conditions when he serviced them. See id. at ¶¶ 13–14. Although Williamson did not know the repair history of the vehicles, he stated that because the Ford vehicles were so old, they likely had undergone at least one brake change before he bought them. See id. at ¶ 17. Williamson also did not know whether any of the brakes or clutches he removed from his Ford vehicles were manufactured or installed by Ford. See id. at ¶ 16. In terms of the replacement parts, Williamson admitted that he purchased his replacement parts at a NAPA store and that companies other than Ford manufactured the replacement parts. See id. at ¶¶ 18–19.

Williamson's lack of evidence connecting Ford brakes, clutches, or gaskets to his asbestos exposure directly contrasts with Walls v. Ford Motor Co., No. 1:20-CV-98, 2022 WL 588901 (M.D.N.C. Feb. 25, 2022) (unpublished). In Walls, the plaintiff alleged that he worked on a fleet of Ford tractors and trucks from 1960–2002. See id. at *11. The plaintiff in Walls demonstrated that

5

he performed hundreds of repair jobs a year and could show with reasonable certainty that Ford provided at least a portion of the replacement parts used during these jobs and that the parts contained asbestos. See id. Based on this record, the Walls court denied Ford's motion for summary judgment, concluding that a reasonable jury could infer that the plaintiff had been exposed to asbestos-containing Ford products and that he had frequent enough contact with the Ford products for them to constitute a substantial factor in his mesothelioma.

Unlike the plaintiff in Walls, Williamson's lack of any knowledge regarding his Ford vehicles' service history or the manufacturer of the parts Williamson removed from or installed in his Ford vehicles creates a "fatal gap" in the record. Harris v. Ajax Boiler, Inc., No. 1:12-CV-311, 2014 WL 3101941, at *4 (W.D.N.C. July 7, 2014) (unpublished). In similar cases where a plaintiff "did not know the service history[,] . . . when the [products] were originally installed or by whom, nor whether any [product] he worked on had previously been serviced," courts have held the causation element too speculative to survive summary judgment. Id.; see Cox, 2020 WL 3473636 at *6. Thus, because no reasonable jury could find that Williamson was actually exposed to any Ford products that caused his mesothelioma, Ford is entitled to summary judgment.[1]

Alternatively, even if this court assumes that at least some of the Ford vehicles purchased by Williamson contained a Ford-manufactured or Ford-installed friction product, Williamson still cannot show that he worked with these Ford products with enough frequency, regularity, or proximity to satisfy the causation requirement. At most, Williamson performed 14 brake

---

[1] Williamson's inability to prove that he was exposed to any Ford friction products also dooms his implied warranty of merchantability claim. Even viewing the record in the light most favorable to Williamson, no reasonable jury could find that Williamson was in any kind of relationship, contract, or privity of contract that would have created an implied warranty concerning Ford friction products. See, e.g., Finch v. BASF Catalysts, LLC, No. 1:16-CV-1077, 2018 WL 3941978, at *3–4 (M.D.N.C. Aug. 16, 2018) (unpublished); Yates v. Air & Liquid Sys. Corp., No. 5:12-CV-752-FL, 2014 WL 4923603, at *13 (E.D.N.C. Sept. 30, 2014) (unpublished), on reconsideration sub nom. Yates v. Ford Motor Co., No. 5:12-CV-752-FL, 2015 WL 9222834 (E.D.N.C. Dec. 17, 2015) (unpublished).

6

replacements on Ford vehicles, many of which were partial replacements involving only the front or rear brakes. See [D.E. 151] ¶ 11. Williamson's own expert witness opined that, "a minimum of 15 to 20 brake jobs" would be required before there could be any increased risk of developing mesothelioma. Finkelstein Dep. [D.E. 143-8] 13. Thus, even by the opinion of Williamson's own expert witness, no reasonable jury could find that Williamson worked with Ford products enough to meet the minimum frequency required to satisfy the causation requirement.

Finally, Williamson has not produced sufficient evidence that Ford's products could have substantially contributed to his mesothelioma. Williamson's work on Ford vehicles only constitutes a small portion of the over 50 brake and 11 clutch changes Williamson performed while working as a mechanic on the farm. See [D.E. 151] ¶¶ 7–19. This small portion of his work is "dwarfed by [] far more frequent, regular, and close-proximity exposure" from Williamson's time working in factories. Connor, 996 F.3d at 115–56; see Mowat Report [D.E. 143-4] 68–71. Thus, no reasonable jury could find that any asbestos exposure from Ford products was a substantial factor in causing Williamson's mesothelioma, especially compared with other, more significant alleged exposures.

Even viewing the record in the light most favorable to Williamson, no reasonable jury could find that Williamson was exposed to Ford products containing asbestos or that any such exposure occurred with any sufficient frequency, regularity, or proximity to cause his mesothelioma. Thus, the court grants Ford's motion for summary judgment on all claims.[2]

---

[2] Ford also asserts that Williamson's negligent retention claim does not apply to Ford given that Ford is not listed as a "Premises Defendant" and that Ford was not involved in the asbestos exposures alleged at Williamson's factory jobs. See [D.E. 143] 1 n.1. The court agrees. Alternatively, and in any event, Williamson failed to produce any evidence that would support a negligent retention claim against Ford. Accordingly, Ford is entitled to summary judgment on that claim. Ford additionally makes several arguments for summary judgment on the failure to warn, implied warranty, and defective design claims based on other, separate grounds of North Carolina law. See [D.E. 143] 10–15. Ford also contends that punitive damages are unavailable as a matter of law. See id. at 15–22. Because Ford is entitled to summary judgment on all claims based on the absence of any evidence of causation, the court does not address Ford's alternative arguments or arguments concerning damages.

7

## IV.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 142] on all claims. The court DISMISSES as moot defendant's Daubert motions [D.E. 144, 146]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules.

SO ORDERED. This _6_ day of September, 2022.

JAMES C. DEVER III
United States District Judge